Date signed May 03, 2010



THOMAS J. CATLIOTA
U. S. BANKRUPTCY JUDGE

## IN THE UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MARYLAND
## at GREENBELT

| | | | |
|---|---|---|---|
| In re: | * | | |
| Griselda Salmeron, | * | Case No. | 09-25864-TJC |
| | * | Chapter | 13 |
| Debtor | * | | |
| * * * * * * * * * * * * * * * | * | | |
| Griselda Salmeron, | * | | |
| Movant | * | Docket | No. 28 |
| vs. | * | | |
| ONE WEST BANK, | * | | |
| Respondent | * | | |

### MEMORANDUM OF DECISION

Before the Court is the Motion to Determine Extent of Secured Lien and Status of

Debt under Section 506 (the "Motion") (Docket No. 28) and the Amended Memorandum

of Points and Authorities in Support of the Motion (the "Amended Memorandum")

(Docket No. 59) filed by Debtor Griselda Salmeron (the "Debtor").  In the Motion,

Debtor seeks to reduce the value of a secured lien against her property in accordance with

§506 of the Bankruptcy Code.[1]  The Motion is opposed by the holder of the lien, LXS 2007-4N Trust Fund through its servicer, One West Bank, FSB (collectively, the "Lender") (Docket No. 60).  The Court held a hearing on the Motion on April 9, 2010, and, for the reasons set forth herein, the Court will deny the Motion.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334, 157(a), and Local Rule 402 of the United States District Court for the District of Maryland.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (K).  The following constitutes the Court's findings of fact and conclusions of law.

**Findings of Fact**

The Debtor filed a petition under Chapter 13 on August 26, 2009.[2]

On December 27, 2006, the Debtor and Cesar Alvarado, her husband, obtained a loan in the amount of $174,750 from the Lender's predecessor.  The loan was secured by a deed of trust against property known as 3764 Bell Pre Road, Unit 5, Silver Spring, MD (the "Bell Pre Property").  At the time of the loan, the Debtor and her husband resided in the Bell Pre Property.  The Lender has filed a proof of claim asserting a secured claim of $190,517.57.

In June 2009, the Debtor and her husband were unable to make payments on the loan and the Bell Pre Property was scheduled for foreclosure.  The Debtor and her husband moved into 4817 Walkingfern Drive, Rockville, MD (the "Walkingfern Property").  They moved because the Bell Pre Property was in foreclosure and, as she testified, the Debtor was "afraid they would throw me out of the house."

---

[1] All statutory references hereinafter are to Title 11 of the United States Code, 11 U.S.C. § 101 et seq., as currently in effect, unless otherwise noted.

[2] Debtor's primary language is Spanish but she was able to testify effectively through an interpreter.

The Debtor testified that she told her attorney at their first meeting that she had moved from the Bell Pre Property.  The Debtor's bankruptcy petition, however, listed the Bell Pre Property as her residence.  Question 15 of the Statement of Financial Affairs, which asks for prior residences in the three years preceding the bankruptcy case, did not disclose any prior residences.  At the first meeting of creditors, the Debtor testified that the schedules and statement of financial affairs were correct. The Petition was amended on September 17, 2009 to list the Walkingfern Property as Debtor's residence.  Docket No. 19.  The Statement of Financial Affairs was amended as to Question 15 on March 23, 2010 to reflect that the Bell Pre Property was her former residence.  Docket No. 61 at 5.

## Conclusions of Law

The Debtor brings this Motion under §506(a) of the Bankruptcy Code. [3]  The Debtor seeks to reduce the Lender's secured claim against the Bell Pre Property to $60,100, which is the value of the Bell Pre Property according to the testimony of Donald Sreboski, an appraiser.  The Debtor's ultimate objective is to pay the Lender's reduced secured claim and the corresponding unsecured deficiency claim under her plan.  The Lender contends that §1322(b)(2)[4] bars the Debtor from altering the secured claim through the plan because the Bell Pre Property is the Debtor's principal residence.  The

---

[3] Section 506(a) provides, in relevant part:

An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim.

[4] Section 1322(b)(2) provides, in relevant part:

    (b)  Subject to subsections (a) and (c) of this section, the plan may –
                        * * *
        (2)  modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence. . . .

Debtor does not dispute that if the Bell Pre Property is the Debtor's "principal residence," as that term is used in §1322(b)(2), the Motion should be denied.

The critical fact at issue, then, is the determination whether the Bell Pre Property is Debtor's "principal residence" as that term is used in §1322(b)(2). The case law cited by the parties focuses on the temporal question presented by §1322(b)(2), *i.e.*, at what point in time is the essential factual question in a particular case to be determined: in some cases, that factual question is the status of real property as the debtor's principal residence. *See, e.g.*, *In re Santiago*, 404 B.R. 564 (Bkrtcy.S.D.Fla. 2009); *In re Churchill*, 150 B.R. 288 (Bkrtcy.D.Maine 1993). In other cases, the essential factual question is whether the claim at issue was secured "only" by the debtor's principal residence. *See, e.g.*, *In re Larios*, 259 B.R. 675 (Bkrtcy.N.D.Ill. 2001); *In re Wetherbee*, 164 B.R. 212 (Bkrtcy.D.N.H. 1994); *In re Boisvert*, 156 B.R. 357 (Bkrtcy.D.Mass. 1993). In both factual scenarios, however, the legal dispute was a disagreement as to the proper point in time at which to determine the underlying factual question.

The cases having to address this temporal question, with two exceptions, adopt one of two points in time at which to make the relevant factual determination: the petition date or the loan origination date. For a general summary of these two lines of case law, *see In re Roemer*, 421 B.R. 23, 25 (Bkrtcy.D.D.C. 2009).

The exceptions conclude that "temporal matters under §1322(b)(2) require a type of hybrid approach, whereby both the circumstances as they exist on the petition date as well as the underlying agreement must be considered." *In re Baker*, 398 B.R. 198, 203 (Bkrtcy.N.D.Ohio 2008). The *Baker* opinion cites the other exception, *In re Howard*, 220 B.R. 716 (Bkrtcy. S.D.Ga. 1998), in which the bankruptcy court held that the

4

necessary factual "determination is to be made by examining the language of the agreement as it exists at the time of the filing of the petition." *Id*. at 718. This Court notes, however, that even this so-called "hybrid approach" still resolves the specific temporal question in favor of the petition date.

The Debtor contends that by the petition date she had changed her principal residence and it was no longer the Bell Pre Property. She requests that the Court adopt the petition date approach or the hybrid approach and conclude that §1322(b)(2) does not bar the relief she seeks.

The Lender contends that the Court should adopt the loan origination date approach and conclude that §1322(b)(2) bars the requested relief because the Bell Pre Property was the Debtor's principal residence on the date the loan originated. Alternatively, the Lender contends that, even under the petition date or hybrid approach, the Motion fails because the Bell Pre Property remained the Debtor's principal residence as of the petition date.

The Court need not choose among the various alternatives for interpreting §1322(b)(2) because, for the reasons that follow, the Court finds that the Bel Pre Property was the Debtor's principal residence as of the petition date.

The parties agree that, in making the determination of whether the Bell Pre Property was Debtor's principal residence as of the petition date, the Court should look to the standards that courts – in this case, Maryland courts – apply in determining a person's domicile. By equating "principal residence" with "domicile," the parties agree that Debtor's domicile when she entered into the loan was the Bell Pre Property.[5] Therefore,

---

[5] This interchangeable use of "principal residence" with "domicile" accords generally with the well-established principle in Maryland law that "the words 'reside' or 'resident' in a constitutional provision or

the precise issue raised by the parties, and requiring resolution by the Court, is whether

Debtor changed her principal residence, *i.e.*, her domicile, prior to the petition date.

The Maryland Court of Appeals has noted that the term "domicile" has been

given more than one definition, but has also explained that there is one key element

underlying all such definitions.

> The concept of domicile is somewhat elusive, and there is no single
> definition of the term which will mechanically determine each person's
> domicile once the pertinent facts are known. One's domicile has been
> defined as the place with which he has a settled connection for legal
> purposes. It has also been defined, in the same judicial opinions,
> as that place where a man [or woman] has his [or her] true, fixed,
> permanent home, habitation and principal establishment, without any
> present intention of removing therefrom, and to which place he [or she]
> has, whenever absent, the intention of returning.

*Blount v. Boston*, 351 Md. 360, 367 (Md. 1998) (internal citations omitted). The *Blount*

court subsequently noted the key element: "This Court has held on numerous occasions

that the controlling factor in determining a person's domicile is his intent. One's

domicile, generally, is that place where he intends it to be." *Id.* at 368 (citations omitted).

This intent requirement is especially critical when the issue in dispute is an

alleged change in domicile. "In order to effect a change of domicile, there must be an

actual removal to another habitation, *coupled with an intention*." *Id.* at 372 (emphasis

added). In the context of whether there has been a change of domicile, the intent element

has two prongs: the first is that "the person must intend to abandon his or her former

---

statute delineating rights, duties, obligations, privileges, etc., would be construed to mean 'domicile' unless a contrary intent be shown." *Blount v. Boston*, 351 Md. 360, 365 (Md. 1998) (citing *Gallagher v. Board of Elections*, 219 Md. 192, 206 (Md. 1959) (citing cases as far back as 1896)). More recently, however, the Maryland Court of Appeals has explained that the two terms are not wholly interchangeable "because in our view, this Court's domicile analysis places greater emphasis on 'intent' . . . ." *Mundey v. Erie Ins. Group*, 396 Md. 656, 679 (Md. 2007).

domicile." The second is that "one must intend that the new place of habitation be his or her domicile." *Id*. (citations omitted).

Here, the Debtor moved out of the Bell Pre Property because she anticipated being evicted following foreclosure. No evidence was presented that since she moved out the Debtor has attempted, or is attempting, to sell the Bell Pre Property, or to lease it. There is no evidence that the Debtor intends, or is attempting, to convert the Bell Pre Property to an investment property. It does not generate any investment income. It has, insofar as the evidence established, merely sat dormant awaiting the results of this proceeding.

Further, the evidence established only that the Debtor and her husband moved into the Walkingfern Property. No evidence was presented of any lease on the Walkingfern Property.[6] The Debtor did not even testify that they are paying rent there and there is no evidence that they are responsible for utilities at that property. The Court also notes there is no evidence that Debtor changed her address with the state Motor Vehicle Administration.

The only documents offered into evidence by the Debtor were copies of a renter's insurance policy proposal covering the Walkingfern Property and a car insurance policy account statement that listed the Walkingfern Property address as the mailing address.[7] The renter's insurance policy proposal is unsigned by either the Debtor or the insurance

---

[6] No leases were disclosed on Debtor's Schedule G.

[7] Respondent's counsel objected at the hearing to the introduction of these documents because they were duplicates and because only incomplete copies of the documents were offered by Debtor's counsel. Citing Federal Rules of Evidence 106 and 1003, the Court instructed Debtor's counsel to file complete copies of these documents under a Praecipe for the Court's consideration. Debtor's counsel did so (*see* Docket No. 71 and attachments 71-1 and 71-2), Respondent filed an objection (Docket No. 73), and Debtor filed a Reply (Docket No. 74). Having reviewed the complete documents and considered the additional filings by both counsel, the Court will allow the introduction of the renter's insurance policy proposal and the car insurance policy account statement into the record.

company.  It is for a policy period commencing June 24, 2009, and is payable in monthly premium payments of $15.08 (*see* Docket No. 68-3 at 5).  It appears to be cancellable at any time.  This document establishes, at most, that the Debtor desired to have her belongings insured while staying at the Walkingfern Property.  It does not reflect a commitment to stay at the Walkingfern Property.[8]  The car insurance policy account statement reflects only that the Debtor's husband received mail at the Walkingfern Property, and is not particularly probative on the matter.

On this record, the Court finds and concludes that the Debtor was simply staying at the Walkingfern Property pending the resolution of the foreclosure proceeding on the Bell Pre Property.  The Court has no doubt that if it were to grant the Motion, the Debtor would immediately move back into the Bell Pre Property.  Indeed, the Debtor did not challenge this point at the hearing, and suggested through counsel that the doctrine of *res judicata* would prevent the Lender from pursuing any relief based on the fact that the Debtor moved back into the Bell Pre Property.  The Debtor failed to establish that she intended either to abandon the Bell Pre Property, or establish the Walkingfern Property as her domicile.

### Conclusion

For the foregoing reasons, the Court will deny the Motion.

**Copies to:**

Griselda Salmeron
4817 Walkingfern Drive
Rockville, MD 20853

---

[8] Moreover, all three versions of Schedule J filed by the Debtor listed "0" for "Homeowner's or renter's insurance."

Edward Gonzalez
2405 Eye Street, N.W.
Suite 1A
Washington, DC 20037

Nnenna C. Burns
Bierman, Geesing and Ward, LLC
4520 East West Highway – Suite 200
Bethesda, MD 20814

One West Bank
Steven Mnuchin, CEO
888 East Walnut Street
Pasadena, CA 91101

Timothy Branigan
P.O. Box 1902
Laurel, MD 20725-1902

U.S. Trustee
6305 Ivy Lane – Suite 600
Greenbelt, MD 20770

**END OF MEMORANDUM OF DECISION**